We'll call our next case, which is 23-2070 Medcalf V.Cramer. Good afternoon. Good afternoon, Your Honors. Is it Kowalik? Kowalik. Kowalik. Yes. How are you? I'm fine, thank you. How are you? Good, thanks. Let's start off, I guess as we should, with jurisdiction, because that is an issue in this case. But I can address it very quickly. I mean, the jurisdiction in this case is the collateral order doctrine. Qualified immunity, our argument is strictly one as a matter of law and under the collateral order doctrine jurisdiction. I also want to address the issue that Your Honors directed us to address in the motion. Oh, sorry. Before you get off of jurisdiction, could I follow up on that? Sure. So we have a number of cases that say when the denial of summary judgment on qualified material fact, we have no jurisdiction. Correct. It appears here that that was at least one of the bases upon which the district court denied relief. The district court said, you know, there are disputed facts about including whether Mr. Medcalf was driving at Mr. Cramer, Officer Cramer. So why do we have jurisdiction? Your Honor, I apologize. I forgot to reserve the two minutes. That's fine. Because we're not addressing that point in this appeal. We're strictly addressing the legal question and not the factual dispute. What if the factual determination governs whether or not, as a matter of law, the shooter, the plaintiff's entitlement to the defendant is entitled to qualified immunity? What if that turns an issue of fact? It may in this case. I don't think the legal issue that we're addressing does. I think you can formulate it to say that that issue could, you know, maybe at the time of trial, the jury obviously is going to have to make that determination. But we're saying here, just ignore, let's just assume what the plaintiff is saying is true and that he didn't turn into Officer Cramer. Under that set of circumstance, do you have qualified immunity for the legal reasons that we're talking about here, specifically with regard to the weapons that were available in the vehicle? Let me ask you about that because there was no objection. No objections filed to the R&R. The R&R does not mention the weapons, the unsecured police car, the ammo, the body armor. All those facts are not referenced in the R&R. The district court adopts it. But there's no objection from your end. What do we do with that? How is there no objection to the R&R? Well, I think that as the letter from this court indicated, the clear error standard can apply in that situation. And I think for the clear error standard to apply, what we have to have is that it was a clear, plain, and obvious error. That's our matrix. Right. And I think that what you have to look at is what the obligation on the district judge is to make that reasoned consideration. And I don't think that given the uncontested facts here regarding that he was driving away, that there was weapons unsecured in the vehicle, these are all uncontested facts. But the weapons were not mentioned in the R&R and there was no objection. There could have been an objection to say, hey, there was a mistake made by the magistrate judge and that the magistrate judge didn't consider the weapons, the unsecured AR-15, et cetera. But there was no such objection. Right. And that's where the clear error standard would apply. And given that, I think that the reasoned consideration obligation on the district judge is to actually go back and look at all the uncontested facts. And in doing the qualified immunity analysis, say, okay, what is the appropriate level of specificity that the thing has to be observed by? And I think that given these facts are there, they're uncontested, that it's a requirement on the district judge to say, look, given those facts, was qualified immunity applicable, regardless of whether an objection was made or not? I think, assume for the moment that I agree with you that the district court should have considered all of those facts. But how do we have jurisdiction to say that? Because that seems like what we've explicitly said time and time again, we lack jurisdiction to do. We can't touch the issue of the existence of a genuine issue of fact. Because there is no genuine issue of fact. It's a question of law. What is the level of specificity that's appropriate in doing the qualified immunity analysis? But you can't create, you can't discuss the law and define the right at the appropriate level of specificity until you've addressed the facts. And the court recommendation doesn't address all these facts. Well, and that's why I'm saying that the review of the record would demonstrate that these are uncontested. That there is no, the plaintiff doesn't contest that there was this AR-15 unsecured in the vehicle. If there was, then you're right. If they said no, there was no. Yeah, I mean, I hear you. I mean, I didn't see anything in the record that disputed the presence of those weapons in the vehicle. But it seems that there would be additional fact-finding necessary about whether Mr. Metcalf had, you know, could easily access those weapons or knew they were there. Other things that are relevant to questions of danger to the defendants or to the public that weren't addressed and that we're not able to get into at the collateral. Right, and that's why our argument is very narrowly tailored. It's basically saying that given these facts, we believe it was an error of law. If your honors decide no, even given those uncontested facts, there's additional things that have to be taken into consideration. Okay, well then the collateral order doctrine doesn't apply and I lose. I mean, that's the net result. But our argument is designed to be narrowly focused on that so that it is strictly just a question of law. And I think that the other thing that seems to be uncontested here is that there is no other case law out there. At least, you know, we've gone through a couple of levels of briefing that specify or that address at the level of specificity that we're talking about. The situation that we had here, we talked about the Abraham case, which is, you know, obviously a key case in the Third Circuit. But, you know, there is no equivalent with, you know, a weapon, especially an RF-15. And I think that's the key point. It's a red herring because there comes a point where if we look at this really rigidly, in a rigid legal analysis, we get into this kabuki dance of saying we have to determine whether or not there was Supreme Court law or a circuit law, their controlling authority, that would have informed the officer about whether or not his or her conduct violated someone's constitutional rights. In reality, please don't know what the Supreme Court cases say or the Third Circuit cases. Common sense, they should know. So why shouldn't we, in a situation like this, just focus on whether or not someone possessed, seized with, afflicted by, common sense would have known that what they're doing here would be likely to violate someone's constitutional right? And forget about the technicalities, which are really just legal myths anyhow. Because as it stands now, the mandate from the Supreme Court is to do this analysis. But the Supreme Court has also said, and we have said, that that does not displace the role of common sense in assessing these kinds of judgments. No, and I think that in, you know, if you want to do, you know, first do a smell test, okay, you have a situation here where you have someone who is, by his own admission, was having some sort of mental crisis. Now, of course, the officer, he was acting strange. He thought he was maybe on drugs or intoxicated in some way. He's acting in this way, has access to these weapons, and for no apparent reason steals this vehicle and goes. Given those facts, I think that the common sense first order smell test would say, you know, maybe there is something there. Maybe this is a potentially very dangerous person who needs to be stopped. Now, this court may, on the full analysis of the case, say, no, the Fourth Amendment was violated. Under those circumstances, or would be violated under those circumstances, and that may be. But the question really is, right now, is was that clearly established at the time? Moving forward, this court can establish and say, no, the presence of the gun in the vehicle doesn't, didn't make this not a violation. But that wasn't the law then, and I think the Jefferson case, a number of other cases that were cited, they were all post-accident cases, and I think that's the important part with regard to that. Jefferson wasn't post-accident, though, was it? I'm sorry? Jefferson was not post-accident. I thought Jefferson was post-incident. Driving down the street and the officer decides that the way to apprehend him is to open fire in the middle of a crowded street. I don't know, it was a crowded street. Maybe I'm mistaken in the cases, but I know there were a number of cases that were cited that happened after this incident occurred. So that's basically my argument. I think that given the uncontested facts and the requirement to do the reasoned consideration, that even under the clear error standard, that this was erroneous. So unless Your Honor has any other questions. Thank you. May it please the Court, good afternoon. I'm Harry Coleman. I represent the appellee, Jeremiah Medcalf. On the issue of jurisdiction, it's our position, appellee Medcalf was the only one who filed objections to the report and recommendations on an unrelated issue. We were unsuccessful. We were comfortable with that. The appellant did not file objections to the report and recommendation, and Your Honor questioned why there was no reference to the weaponry, the vest, and the ammunition. And I think I can answer that. Throughout the entire case, the entire defense was based upon the fact that Officer Kramer perceived the vehicle turning towards him or going at him. Medcalf, my client, the appellee, when he was deposed, wasn't asked one question on an AR-15. He wasn't asked one question on a vest. He wasn't asked one question about ammunition. I asked Officer Kramer about the AR-15 only as to whether it was locked. The safety was on it. Again, it's our position that the district court did not reference the presence of the AR-15, the ammunition, or the vest because it was not an issue at that level. The entire thrust of the defense was the vehicle in route towards the officer. The reason I can say that is if the court looks to the motion for summary judgment, you will not see the word AR-15, ammunition, or vest. Again, the focus was the vehicle. Does that explain why there were no objections filed? The issue of the AR-15, I say this with utmost respect, the issue of the ammunition, the weaponry, and the vest became an issue I submit at this level. It was not an issue. Do you agree those facts were not in dispute, that there was an unsecured AR-15 in the automobile as well as the ammunition in the vest? Your Honor, I submit and agree that there was an AR-15, Mr. Officer Kramer's personal AR-15, in a gym bag with the ammunition in the vest on the passenger side floor of the vehicle. Metcalf, as I indicated, was not, Apelli Metcalf, was not questioned about that. Apelli Metcalf got in the vehicle under quick-moving circumstances to get out of Dodge, for lack of a better term. I see where you're going in terms of whether or not Metcalf knew what was in that bag, and you're suggesting he didn't. He did not. But it would seem to me the more important question would be whether or not Kramer knew what was in the bag, and he clearly did. Whether Kramer knew? Right. He definitely did. Again, Kramer's off-duty. The event happens about 2.30. Kramer's off-duty at 2.00, answers the personal call of his relative, Mr. Fossil-Langer, who's the manager of the lumberyard, and goes out to the lumberyard to investigate. So there's no question Kramer knew. There was a reference that the magistrate judge did not indicate that the vehicle was left unattended. But I submit that she did. If you look to the page 8, I believe it was, of the magistrate's report and recommendation, she indicates, the court indicates, excuse me, that Metcalf jumped in a unlocked and unattended. Parby, thank you. She also indicates, and now she does not indicate the AR-15, as we discussed, but she does indicate the additional issue that he, after he searched his vehicle, Metcalf was pacing back and forth, and once he was too close to the car and was told to go somewhere else. So she does identify Metcalf's unrestrained status. And again, this is a suspicious vehicle call that they respond to inside the lumberyard. Now, another issue that was touched upon by my colleague was that the law, we submit, and I say with respect, that the cases are somewhat clear by 10 or 20 years that an unarmed driver, and I submit even an armed driver, has a right not to have deadly force used against him when no officer or bystander's lives are in immediate peril. I submit, and I don't mean to be flippant by saying this, but I was thinking about this driving down. If my wife, unbeknownst to me, put a Glock underneath the seat of my vehicle, and I'm not aware of it being there, the question is, am I armed or unarmed? And that's the question with Metcalf, because Metcalf was unaware of the presence of the AR-15. And again, the courts in the defense, excuse me, their entire, entire thrust of the defense, including Metcalf's own testimony, or Kramer's own testimony, is that he fired through the driver's side window out of a fear that the vehicle was coming towards him. He never mentioned the AR-15 or the ammunition or the vest at any time. I'm not sure that's true. I'm looking at his motion for summary judgment, and you're absolutely correct that he focused on the vehicle moving toward him or at him. But he also says here on page six of his summary judgment motion, he says, further, plaintiff was potentially dangerous because in stealing the police SUV, he also stole the loaded AR-15 rifle, which was present and unlocked in the vehicle. And the summary judgment record also includes Officer Kramer's testimony from the criminal proceedings, where he talked at some length about the status of the guns and where exactly they were in the police SUV. There's no question, Your Honor, and if I misspoke about that motion, please accept my apologies. The issue, though, that I was referencing, though, and he did testify in the criminal case, I think not in regard to that I fired because of the presence of the AR-15, but I think he was testifying as to what was present there. But his entire depositional testimony, I believe, is that he fired only because he was in fear that the vehicle was coming towards him. So, I mean, is it your position that we have to focus on the depositions that were prepared for this case to exclusion of the other evidence? No. Because the district court, that was before the district court at the time of the report and recommendation, and I'm not saying that at all. I believe that the decision of the district court by virtue of the magistrate judge's report and recommendation and the district court judge's affirmance of that, in effect, and the failure to file objections should be affirmed. The court talked about the limited jurisdiction. I do believe it's a plain error standard. And there's some discussion in your precedent about affording some level of review to dispositive legal issues raised, and that's a reasoned consideration. And I think a reasoned consideration by this court will be consistent with the finding of the magistrate judge and the district court judge. So do you think we should affirm as opposed to dismiss for lack of jurisdiction? No. In reverse, I think you should dismiss for lack of jurisdiction for the reasons the court referenced earlier. But in the event you don't, on jurisdictional grounds, I believe it should be affirmed. And so what constitutional right, how would you frame the constitutional right here? I think the constitutional right, Your Honor, and I framed it, is that an unarmed driver or even an armed driver has the right not to have deadly force used against them when no officer, and I submit with respect that Appellant Kramer was not in harm's way in the circumstances presented, including his testimony and the video evidence. All you need is a dispute of fact on whether he was in harm's way. Correct. And according to the district judge, magistrate, former magistrate Mahalchik, is that there was disputed facts. And the precedent from this court indicates, and I just want to make sure I get this right and I don't misspeak, the district court determined that there is sufficient record evidence to support a set of facts under which there would be no immunity for Officer Kramer. And as an appellate body, you must accept that set of facts on interlocutory review. There is dispute. And based upon that dispute, if the set of facts articulated by the district court, if we can prove those, then Officer Kramer is not entitled to immunity. And that's our position in a nutshell. I do believe there are some questions relative to the AR-15, et cetera, but I think when you look at it as to the thrust of the defense at the district court level, that wasn't even an issue, we submit. It was solely on the vehicle and the fear of the oncoming vehicle that Mr. Kramer has articulated. I believe I have more time, but unless you have any additional questions. I think we're done. Very good. Thank you. I appreciate it. I just want to address a few things. The first, as Your Honor pointed out, we did raise both of them in the summary judgment motion. Now, we did favor the one argument over the other because we thought that the video evidence actually pretty clearly showed that there was a turning in. But obviously, that's a matter for the jury now. Turning toward the officer? Correct. Counsel spoke a lot about why Officer Kramer acted the way he did as a basis for their argument. But the fact of the matter is that under the Graham standard, it doesn't matter why he acted. It's an objective reasonableness standard that doesn't take into effect the subjective thoughts or motivations of the officer. So that argument that while he was interested in one thing and not the other, why he acted, it's all irrelevant. And in fact, when you have a situation like this, you look at the case and you go, okay, well, we're going to advance this subjective, what he's testifying to, as his subjective reasons. But the law also allows us to advance the objective reason as a reason to dismiss it. So under the law, we're permitted to do both. And, you know, until that changes, that's what the law allows. And the other point, counsel seemed to suggest that in the jurisdictional question, that all they have to do is demonstrate that there's one set of arguments that would be denied on qualified immunity for there to be no jurisdiction in this court. And I don't think that's true because when the argument in this court is strictly on a question of law, the fact that we may have had a different argument that was denied because there was a question of fact, I think it's irrelevant. We can't raise that here, obviously. But we should be able to raise the other, the strictly legal question. Would you agree with the reason, Jefferson, that it's clearly established that an otherwise non-threatening individual engaged in vehicular flight is entitled to be free from being subjected to deadly force if it is unreasonable for an officer to believe his or other lives are in immediate jeopardy? Is that the constitutional question we're dealing with right now? I don't think specifically it is. I think it's a variation on that because it doesn't take into consideration the knowledge of the fact that those things. I don't know why you're parsing that. If you just say M is in softball. I'm sorry? If you say yes, it would help you. But answer it the way you like. Yeah, no, I think that the, you know, the issue here, because that, I'm sorry. It doesn't take into the equation the other facts. I'm sorry, Your Honor. I think that the standard that we're dealing with here has to take into consideration the fact that the weapon, the unsecured weapon was there. And I think what Your Honor read didn't quite take that into consideration. As a subsection of what constitutes a dangerous person. If the car was coming toward the officer, I think that's your opponent, Mr. Corman's argument. If the officer thinks the car is coming toward him, does it matter whether there's an AR-15 or a Cupid doll inside the car? Well, if we're talking about just simply using the car as a weapon? Using the gun to stop the car coming toward the officer. I'm sorry, Your Honor. If the officer reasonably thinks the car is coming toward him. Correct. And the only way to stop that is to stop the car by firing at it. Correct. So that's a logical conclusion. Yeah. But if that's what we're dealing with, isn't that enough? And maybe that's why it was suggested the record does not get into a finding as to what was in the bag, whether the bag was in the car, whether it was loaded or unloaded AR-15. Well, yeah. If you're talking about that, using the car as a weapon, I think that you're absolutely right. But that's why I started off saying, let's assume everything they're alleging is true. And he didn't do that. He was trying to drive next to him. Then the question becomes, does an officer who knows that there's an unsecured AR-15 in the vehicle, can that officer then use deadly force to stop that person? And that's the question. Now, the case law is empty. There's nothing. Because at that level of specificity. So that would be our argument, that the absence of that means qualified immunity is what should happen here. All right. Thank you, Your Honor. Thank you all, Counsel.